OPINION
{¶ 1} Defendant, Juan Hendricks, appeals from his conviction and sentence for aggravated burglary.
 {¶ 2} On March 8, 2007, around 3:00 a.m., ninety-year-old *Page 2 
Sam Staten awoke to the sound of pounding on the front door of his home at 135 Fremont Avenue in Springfield. The man pounding on the door was yelling that Justin, a young man who lived with Staten and whom Staten had helped to raise, was in the hospital. Mr. Staten opened the door, and he was immediately tackled by Defendant. Each time Mr. Staten attempted to get up, Defendant would tackle him again. Defendant demanded money or an ATM card he could use to withdraw money. Mr. Staten told Defendant he did not have either one.
 {¶ 3} Defendant took Mr. Staten upstairs to look for money and any other people who might be in the house. While upstairs, Defendant saw Mr. Staten's wallet and removed money from it. Defendant then tackled Mr. Staten one final time, disassembled the phone so Mr. Staten could not call the police, took Mr. Staten's car keys and drove off in his vehicle. Mr. Staten found another phone and called 911. As a result of Defendant's conduct Mr. Staten suffered broken ribs and a broken vertebrae in his back.
 {¶ 4} Springfield Police Sergeant Robert Tate quickly arrived on the scene and observed that Mr. Staten was in a great deal of pain and that his breathing was labored. After obtaining a description of the suspect, Sergeant Tate left to *Page 3 
search for Mr. Staten's stolen vehicle. Sergeant Tate located and stopped Mr. Staten's stolen vehicle on Catherine Street, one block from Staten's residence. A passenger in the stolen vehicle fled on foot, but Sergeant Tate apprehended him after a brief foot chase. Defendant, the driver of Mr. Staten's stolen vehicle, was arrested.
 {¶ 5} Officers brought Mr. Staten to the scene of the stop on Catherine Street. Mr. Staten positively identified Defendant as the man who entered his home and assaulted and robbed him. Mr. Staten recognized Defendant as a friend of Justin's, who had been to Mr. Staten's home on several prior occasions.
 {¶ 6} Defendant was indicted on two counts of aggravated burglary in violation of R.C. 2911.11(A)(1). Following a jury trial, count one of the indictment was dismissed. The jury found Defendant guilty of count two. The trial court sentenced Defendant to the maximum allowable ten year prison term.
 {¶ 7} Defendant timely appealed to this court from his conviction and sentence. Defendant's appellate counsel filed a brief pursuant toAnders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396,19 L.Ed.2d 493, stating that he could find no meritorious issues for appellate review. We notified *Page 4 
Defendant of his appellate counsel's representations and afforded him ample time to file a pro se brief. Defendant filed a pro se brief on March 11, 2008. The State filed its brief in response on July 22, 2008. This matter is now before us for a decision on the merits of Defendant's appeal.
 {¶ 8} Defendant's appellate counsel raised one possible issue for appeal. Defendant raised the same issue in his pro se brief:
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE GUILTY VERDICT WAS AGAINST THE SUFFICIENCY/MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply is the one set forth in paragraph two of the Syllabus of State v.Jenks (1991), 61 Ohio St.3d 259:
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The *Page 5 
relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 12} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 13} "[T]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 14} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact *Page 6 
that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 15} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 16} "[B]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."
 {¶ 17} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 18} Defendant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides: *Page 7 
 {¶ 19} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 20} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another."
 {¶ 21} Neither Defendant's appellate counsel, nor Defendant in his pro se brief, contends how or why Defendant's conviction for aggravated burglary is not supported by legally sufficient evidence or is against the manifest weight of the evidence.
 {¶ 22} Viewing the totality of the evidence in this case, including the testimony of the victim, Sam Staten, and the police officers in a light most favorable to the State, as we must, we conclude that a rational trier of facts could find all of the essential elements of aggravated burglary to be proved beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 23} The credibility of the various witnesses who *Page 8 
testified at trial and the weight to be given to their testimony were matters for the trier of facts, the jury, to decide. DeHass. The testimony of the victim, Sam Staten and the police officers regarding Defendant entering Staten's home, stealing Staten's money, and inflicting physical harm on Staten, is not contrary to the guilty verdict. The jury did not lose its way in this case simply because it chose to believe the State's witnesses, which it had a right to do. Defendant presented no evidence or witnesses.
 {¶ 24} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 25} Defendant's first assignment of error is overruled.
 {¶ 26} In his pro se brief, Defendant raises the following additional assignment of error.
SECOND ASSIGNMENT OF ERROR
 {¶ 27} "DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE."
 {¶ 28} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable *Page 9 
representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id.; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 29} Defendant argues that his trial counsel's performance was deficient in several ways. Defendant complains about his counsel's trial preparation, claiming that (1) counsel did not spend adequate time with him and properly prepare for trial, (2) counsel did not call witnesses Defendant wanted called, (3) counsel did not subpoena phone and medical records, and (4) defense counsel had the smell of alcohol on his breath. These claims depend upon facts and evidence outside this record, and therefore cannot be adjudicated on direct appeal. The proper vehicle to raise these claims is a post-conviction proceeding pursuant to R.C. 2953.21. State v. Cooperrider (1983), 4 Ohio St.3d 226.
 {¶ 30} In any event, Defendant does not specifically identify the particular witnesses or records he claims counsel should have introduced, nor does he proffer what those witnesses would have said if called, or what those records *Page 10 
would have shown if subpoenaed, much less demonstrate a reasonable probability that the outcome of his trial would have been different; that he would have been acquitted had counsel taken those steps. There is no basis to suggest that the victim's hospital records would not have shown he suffered broken ribs and a broken back. No deficient performance by counsel, much less resulting prejudice, has been demonstrated on this record.
 {¶ 31} Defendant also complains about his counsel's performance during the trial, claiming that (1) counsel did not adequately cross-examine the victim with respect to his prior statements claiming he did not know who attacked him, and discrepancies in the amount of money the victim claims Defendant took from him versus the amount of money police recovered from Defendant, and (2) counsel refused to allow Defendant to take the stand and testify at trial, even though Defendant wanted to do so.
 {¶ 32} A review of the trial transcript refutes Defendant's claims and demonstrates that defense counsel did cross-examine the victim, confronting him with prior inconsistent statements he made and questioning the accuracy of his in-court identification of Defendant as the perpetrator. Furthermore, defense counsel argued to the jury these inconsistencies and *Page 11 
discrepancies between the victim's testimony and the other evidence.
 {¶ 33} As for Defendant's claim that his counsel would not allow him to testify at trial in his own defense, an examination of the record shows that when the trial court asked defense counsel if he would be putting on any evidence or witnesses, defense counsel first consulted with Defendant before answering, "We would have no case to present." The following colloquy then occurred:
 {¶ 34} "THE COURT: Okay. And you've obviously, had conversations with your client. He understands that he does have the right to testify if he chooses to do so.
 {¶ 35} "MR SCHUTTE: (Nods head.)
 {¶ 36} "THE COURT: And at this point in time, he's making the decision to not testify; is that correct?
 {¶ 37} "MR. SCHUTTE: Is that correct"
 {¶ 38} —
 {¶ 39} "(WHEREUPON, Defense counsel and Defendant consult.)
 {¶ 40} —
 {¶ 41} "THE DEFENDANT: Yeah.
 {¶ 42} "MR. SCHUTTE: That's correct, Your Honor." (T. 148).
 {¶ 43} This record, which demonstrates that Defendant made *Page 12 
the decision, after consulting with his counsel, not to testify, does not support Defendant's claim that his counsel opposed Defendant's desire to testify in his own defense, much less that counsel prevented it. No deficient performance by counsel has been demonstrated. Ineffective assistance of counsel has not been shown.
 {¶ 44} Defendant's second assignment of error is overruled.
 {¶ 45} In addition to reviewing the possible issues for appeal raised by Defendant and his appellate counsel, we have conducted an independent review of the trial court's proceedings and have found no error having arguable merit. Penson v. Ohio (1988), 488 U.S.75, 109 S.Ct. 346,102 L.Ed.2d 300. Accordingly, Defendant's appeal is without merit and the judgment of the trial court will be affirmed.
WOLFF, P.J. And WALTERS, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Amy M. Smith, Esq.
Brett A. Rinehart, Esq.
Juan R. Hendricks
 Hon. Douglas M. Rastatter *Page 1